# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| TROY REDD,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DUSTIN LUTGEN, et al,<br><br>　　　　Defendants. | No. C11-3046-MWB<br><br>***REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*** |

## TABLE OF CONTENTS

*I.*　　*INTRODUCTION*..................................................................... *2*

*II.*　　*RELEVANT FACTS* ................................................................. *3*

*III.*　　*SUMMARY JUDGMENT STANDARDS* ..................................... *6*

*IV.*　　*ANALYSIS* .............................................................................. *8*
　　*A.*　　*Were Redd's First Amendment Rights Violated?* ............... *8*
　　　　*1.*　　*Applicable Standards.* ............................................. *8*
　　　　*2.*　　*Analysis* ................................................................. *9*
　　*B.*　　*Are Redd's Claims Barred By 42 U.S.C. § 1997e(e)?* ...... *11*
　　*C.*　　*Are Redd's Claims Barred By The Statute Of Limitations?* .............. *12*
　　*D.*　　*Are Defendants Entitled To Qualified Immunity?* ........................ *13*

*V.*　　*CONCLUSION AND RECOMMENDATION* .................................... *16*

## I. INTRODUCTION

Plaintiff Troy Redd, an inmate in Iowa's state prison system, submitted materials to commence this lawsuit on September 12, 2011. Due to various delays, his *pro se* complaint was not accepted for filing until August 27, 2012, and was not served until February 2013. In his complaint, Redd contends that the defendants violated his constitutional right to the free exercise of religion while Redd was an inmate at the Fort Dodge Correctional Facility (FDCF). The five named defendants are individuals who were, during the relevant period of time, associated with the Iowa Department of Corrections.

Defendants have filed an answer in which they deny Redd's claim. No party demanded a jury trial. Defendants have now moved (Doc. No. 11) for summary judgment. Redd has filed a resistance (Doc. No. 24).[1] Judge Bennett has referred the motion to me for the preparation of a report and recommended disposition. No party has requested oral argument and, in any event, I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted.

---

[1] Redd filed an initial resistance (Doc. No. 17) in which he stated that he was unable to obtain evidence necessary to resist the motion and asked that the motion be denied pursuant to Federal Rule of Civil Procedure 56(d) (which he referred to by its former designation as Rule 56(f)). Redd did not comply with Rule 56(d) by providing specific details, via affidavit or declaration, showing that the missing evidence would be essential to his resistance. *See, e.g., Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, LLP*, 687 F.3d 1045, 1050 (8th Cir. 2012) (a Rule 56(d) movant must set forth the specific facts that further discovery might uncover). Redd identified four individuals from whom he wished to obtain affidavits but did not describe the information he expected them to provide or explain how that information would be relevant to his resistance. As such, I extended Redd's time to file his final resistance materials but did not grant his request for denial of the motion for summary judgment pursuant to Rule 56(d). *See* Doc. No. 23. Redd's subsequent resistance (Doc. No. 24) does not contend that his ability to resist the motion was impaired by his inability to obtain affidavits.

## II.  RELEVANT FACTS

Unless otherwise noted, the following facts are undisputed for purposes of defendants' motion:

***The Parties.***  Plaintiff Troy Redd, a Muslim, has been an inmate in the Iowa prison system since 1999.  His tentative discharge date is May 23, 2020.  From July 10, 2009, until February 25, 2013, Redd was incarcerated at FDCF.

During the relevant events: (a) defendant John Baldwin was the Director of the Iowa Department of Corrections, (b) defendant Cornell Smith was the Warden at FDCF, (c) defendant Mary Dick was the Treatment Director at FDCF, (d) defendant Dustin Lutgen was the Treatment Manager at FDCF and (e) defendant Imam Taha Tawil was the Islamic Consultant for the Iowa Department of Corrections.

***The Dispute.***  On July 7, 2009, Imam Taha Tawil sent a memo to prison staff concerning the observance of Ramadan, which includes a month of fasting followed by a feast to celebrate the end of Ramadan.[2]  The memo included an agreement and indicated that inmates who intended to participate in the Ramadan observance were required to sign the agreement (hereafter the Ramadan Agreement).  On both August 14 and August 17, FDCF's Activity Specialist, Rusty Gibbs, sent a memo to all staff and inmates at FDCF.  Redd was listed on both memos as a Ramadan participant and the lists were posted in all cell houses in the prison.

By signing the Ramadan Agreement, an inmate declared himself to be a Muslim. The Agreement included a summary of Muslim beliefs and an agreement to follow certain guidelines during Ramadan, including fasting during daylight hours, refraining from certain behaviors (*e.g.,* cursing and lying) and providing charity for purposes of preparing the Eid.  The Agreement stated that the failure to comply with these

---

[2] It appears the English translation of the observance may properly be spelled either "Ramadan" or "Ramadhan."  Both spellings appear at various points in the record.  I have also noted multiple spellings of the feast that occurs at the conclusion of Ramadan.  I will refer to that event as either the "Eid" or the "celebration."

guidelines would cause the inmate to be removed from the list of participants and to be excluded from the Eid. The Agreement further noted that the fasting requirement would be waived for inmates "who are ill and must take their medication." Finally, the Agreement noted that even if an inmate was removed from the Ramadan list, he could still fast on his own. Doc. No. 11-3 at 8.

Redd refused to sign the Ramadan Agreement, believing it to be illegal. As such, he was advised that he could not participate in the Eid. On September 16, 2009, he sent an inmate memo to Lutgen concerning his participation, stating:

> Mr. Lutgen I have been informed by Mr. Gibbs, that it is your decision to deny me, my Constitutional Right to participate with my religious festive, since I've exercised my Constitutional Right not to sign an illegal document concerning my rights to practice religion. It is my understanding you will not allow me to participate with the religious feast at the end of Ramadhan. My question to you Mr. Lutgen are you planning on still denying me my right to participate in a Religious function? Thank You for taking the time to address this matter.

Lutgen wrote a proposed response the same day, but before sending it to Redd he spoke with Taha Tawil, who told Lutgen that Redd could attend the celebration despite his failure to sign the Ramadan Agreement. As such, on September 17, 2009 (four days before the celebration), Redd was added to the Eid list, signifying that he was allowed to attend the celebration. The list was posted in all units on that date.

Gibbs states, by affidavit, that prior to the celebration he "personally approached Redd and told him that he could attend the Eid celebration." Doc. No. 11-3 at 25. Redd does not deny this, but states in his affidavit that there is more to the story:

> Prior to September 21, 2009, Activity Specialist Rusty Gibbs had not advised me of Dustin Lutgen [sic] alleged correspondence with Imam Taha Tawil. Rusty Gibbs the day of the Eid-Ul-Fitter (September 21, 2009) paged me to H-building where the Eid-Ul-Fitter was being held by the other participants; told me that Dustin Lutgen was currently away from the facility; would not be back until after the celebration was completed, that he felt it was wrong for Dustin Lutgen to deny me the right to participate with the Eid-Ul-Fitter celebration, so he was going to

4

> allow me to attend. I then asked him (Rusty Gibbs) has Dustin Lutgen given permission for me to attend. Rusty Gibbs stated that Dustin Lutgen had not given permission, I then informed Rusty Gibbs that Dustin Lutgen had given me a directive that I would not be allowed to attend. So I did not attend the Eid-Ul-Fitter (Prayer/Feast) of 2009.

Doc. No. 24-2 at 2-3. Thus, while Redd admits Gibbs told him he could attend, he states that Gibbs also told him that Lutgen had not agreed to allow that attendance. In other words, according to Redd, Gibbs told Redd that Gibbs was acting against Lutgen's directive in telling Redd that he could attend. According to Redd, he chose not to attend because it was still Lutgen's position that he was not allowed to do so.

The feast was held at FDCF on September 21, 2009. Redd did not attend. On October 12, 2009, he filed a religious grievance. Redd's narrative description of events does not indicate he was ever advised that he could attend the feast. On October 15, 2009, Lutgen sent Lisa Locoh, the Statewide Religious Coordinator, an email message concerning the grievance. Lutgen wrote:

> Prior to the start of this years [sic] Ramadhan all practicing Islamic offenders were given the Ramadhan sigh-up [sic] agreement to review and sign. I was informed that offender Redd 0206183 refused to sign the agreement, stating that it is an illegal document. He was informed at that time that if he did not sign he would not be permitted to attend the Feast of Eid-Ul-Fitr, but may participate in his religious practice. He stated that he did not care about the feast and understood what he was being told. A day or 2 prior to the Feast of Eid-Ul-Fitr offender Redd told an Activity Specialist that he now wanted to participate in the Feast, he was informed that he understood the expectations and would be denied. I then received a kite from offender Redd indicating he would file grievance if he was not allowed to practice his religious rights. I in turn called Imam Taha Tawil for his opinion. He said that he supported allowing offender Redd to participate. Which is what was done. Institutional memos dated 8/14/09 and 8/17/09 were distributed for approved participants-offender Redd's name, number and unit was included on the list. This list was posted on all units. On 9/17/09 a memo was distributed and posted on all units with offenders approved to participate in Feast Eid-Ul-Fitter which included offender Redd's name, number and unit.

5

> It is my opinion that if the contract is not mandatory that we no longer use the document prepared by the Imam.
>
> Lisa I will send you a copy of the grievance today through mail.

On October 16, 2009, Locoh responded to Lutgen via email:

> I received the Grievance form today concerning Troy Redd. I'm not sure why he filed the Grievance … it appears you resolved the issue. One question I would have is why did Offender Redd find the original form to sign for the meal "illegal." I'm thinking that Taha should talk with him about future events that from now on he needs to sign the form when he is requested to do so and there won't be exceptions made next time for him to sign the form. It seems to me he was being rather difficult in this situation. Let me know your thoughts.

Redd then waited nearly two years before attempting to commence this action. He contends that his constitutional rights were violated by defendants' alleged refusal to allow him to participate in the celebration because he did not sign the Ramadan Agreement.

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or

attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV. ANALYSIS

Defendants raise four separate arguments in seeking entry of summary judgment:

  a. Redd's First Amendment rights were not violated.

  b. Redd's claims are barred by 42 U.S.C. § 1997e(e).

  c. Redd's claims are barred by the statute of limitations.

  d. Defendants are entitled to qualified immunity.

In addition, and in the alternative, defendants argue that Redd's claims against defendants Baldwin, Smith and Dick must be dismissed because there is no evidence that they had any involvement with the relevant events.

### A. *Were Redd's First Amendment Rights Violated?*

#### 1. *Applicable Standards*

The First Amendment declares that "Congress shall make no law . . . prohibiting the free exercise [of religion] . . . ." U.S. Const. amend. I. This restriction applies to the states by virtue of the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). A person claiming that government action or regulation violates his or her free exercise rights first "must establish that the action substantially burdens his sincerely held religious belief." *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997). To constitute a "substantial burden," governmental action must "significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to

8

engage in those activities that are fundamental to a [person's] religion." *Id.* (quoting *In Re Young*, 82 F.3d 1407, 1418 (8th Cir. 1996)). If the plaintiff makes this showing, the government must prove "that its policy is the least restrictive means to further a compelling governmental interest." *Id.*

Prison inmates have the right to a reasonable opportunity to exercise their religious beliefs. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). However, when an inmate alleges a violation of his or her constitutional rights, additional factors come into play to reflect the legitimate needs of the penal system. *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004). In *Murphy,* the court summarized the relevant factors, as enunciated by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987):

> A prison regulation or action is valid, therefore, even if it restricts a prisoner's constitutional rights if it is "reasonably related to legitimate penological interests." . . . *Turner* sets forth four factors that courts should consider in making that determination. First, we ask whether there is a "valid rational connection" between the prison regulation and the government interest justifying it. . . . Second, we consider whether there is an alternative means available to the prison inmates to exercise the right. . . . Third, we examine whether an accommodation would have "a significant 'ripple effect'" on the guards, other inmates, and prison resources. . . . Fourth, we evaluate whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests."

*Murphy,* 372 F.3d at 982-83 (quoting *Turner*, 482 U.S. at 89-91).

### 2. *Analysis*

Redd's first task is to demonstrate that the defendants took action that imposed a substantial burden on his sincerely held religious beliefs. He claims that the defendants did so by preventing him from participating in the 2009 Eid unless he signed the Ramadan Agreement. While the defendants make the factual argument that Redd was *not* excluded from the Eid, and indeed was told that he could attend, for purposes of

9

Redd's argument I will assume that he was actually or constructively prohibited from attending.³ Thus, the issue is whether conditioning participation in the Eid on the execution of the Ramadan Agreement substantially burdened Redd's sincerely held religious beliefs.

Redd does not make a coherent argument on this issue. He generally contends that is illegal to require an inmate to sign a contract, but he cites no authority for this proposition. Moreover, and most critically, Redd does not explain how execution of the Ramadan Agreement would have imposed any burden on the exercise of his religious beliefs. He does not, for example, highlight a particular portion of the Agreement and state that it is contrary to his beliefs. It is undisputed that the Agreement was prepared by Imam Taha Tawil, the Islamic Consultant for the Iowa Department of Corrections.⁴ Redd does not contend that Taha Tawil's summary of the relevant beliefs and statement of Ramadan's observational guidelines were incorrect.

If, by contrast, the Agreement included an express renunciation of the pillars of Islam, or otherwise made statements that contradicted Redd's beliefs, he could argue that requiring him to sign the Agreement imposed a burden on his beliefs. But Redd makes no such argument. Instead, he appears to argue that it was the mere *fact* of the Agreement, regardless of its content, that was offensive.

To show a substantial burden, Redd must show that making execution of the Ramadan Agreement a condition of participating in the Eid either (a) significantly

---

³ Accepting the factual statements in Redd's affidavit as true, which I must in considering the motion for summary judgment, I find that there is a genuine issue of material fact as to whether Redd was free to attend the Eid without facing disciplinary consequences. This is based on Redd's allegation that Gibbs told him Lutgen had not granted permission for Redd to attend.

⁴ Redd complains he was not told that Imam Taha Tawil drafted the Ramadan Agreement and sought to require its execution by Muslim inmates. Doc. No. 24-2 at 2. I find that this allegation is immaterial to Redd's claims. Whether or not he was told who drafted the Agreement has no bearing on whether signing the Agreement would have substantially burdened Redd's religious beliefs. Moreover, I note that the Agreement states, at the top, that it is "From: Islamic Council of Iowa / Imam Taha Tawil."

inhibited or constrained conduct or expression that manifests a central tenet of his beliefs, (b) meaningfully curtailed his ability to express adherence to his faith or (c) denied him a reasonable opportunity to engage in activities that are fundamental to his religion. *Weir,* 114 F.3d at 820. Based on the record before me, I find that Redd has failed to raise a genuine issue of material fact for trial on this issue. He has not shown that executing the Ramadan Agreement would have imposed any burden, let alone a substantial one, on his religious beliefs.

Because Redd has failed to establish the threshold, "substantial burden" requirement, no further analysis of his free exercise claim is necessary. *See, e.g., Murphy*, 372 F.3d at 983. I recommend entry of judgment in defendants' favor as a matter of law. However, because this is a Report and Recommendation, subject to *de novo* review, I will briefly address defendants' other summary judgment arguments.

### B. Are Redd's Claims Barred By 42 U.S.C. § 1997e(e)?

The Prison Litigation Reform Act (PLRA) of 1996 includes the following restriction:

> **(e) Limitation on recovery**
>
> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

42 U.S.C. § 1997e(e). Defendants contend that this restriction bars Redd's claim, as he does not allege that he suffered physical injury (or the commission of a sexual act). Defendants are partially correct. In *Royal v. Kautzky*, 375 F.3d 720 (8th Cir. 2004), the Eighth Circuit Court of Appeals held that Section 1997e(e)'s "physical injury" requirement applies to First Amendment violations. *Id.* at 723. Thus, an inmate who proves a First Amendment violation, but who suffered no physical injury, may not

11

recover damages for any mental or emotional injury. *Id.; accord Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012) (recognizing *Royal* as controlling law in this circuit).

The restriction imposed by Section 1997e(e) does not, however, preclude all forms of relief. An inmate alleging a First Amendment violation may, even in the absence of physical injury, seek "nominal damages, punitive damages, injunctive relief and a declaratory judgment." *Royal*, 375 F.3d at 723. Here, Redd's complaint requests "monetary relief as the Court or Jury see as just." Doc. No. 4 at 4. This request, especially in the context of a *pro se* complaint, is broad enough to include nominal damages and punitive damages. As such, while defendants are correct that Redd cannot recover damages for any mental or emotional injury if he prevails in this case, that conclusion is not dispositive of the entire case. If Redd could prevail on the merits of his First Amendment claim, he would be entitled to seek relief in the form of nominal and punitive damages.

C.  *Are Redd's Claims Barred By The Statute Of Limitations?*

Defendants next argue that a two-year statute of limitations applied to Redd's claim and that the claim is barred because Redd's complaint was not accepted for filing until nearly three years after the 2009 Eid. Defendants are correct about the applicable limitations period. Section 1983 actions are subject to the statute of limitations that applies to a personal injury action in the state in which the cause of action arose. *Wilson v. Garcia*, 471 U.S. 261, 278-79 (1985). Claims arising in Iowa are therefore governed by Iowa's two-year statute of limitations for personal injury actions. *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir. 1985) (applying Iowa Code § 614.1(2)).

Redd's injury occurred, at the latest, on September 21, 2009, when he did not attend the Eid. On September 12, 2011, Redd filed a *pro se* motion for leave to proceed *in forma pauperis,* along with his complaint. Doc. Nos. 1 and 1-3. It is true that his motion was not granted until August 27, 2012, and, therefore, that his

complaint was not formally accepted for filing until that date. Doc. Nos. 3 and 4. There is no evidence, however, that Redd had any control over the amount of time that passed between his initial filing and the date his motion was granted. Indeed, defendants do not argue that there is anything else Redd could have done once he filed his motion and proposed complaint except to wait for the court to rule.

"A civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. Had Redd filed only his motion to proceed *in forma pauperis*, and not a complaint, defendants' argument would carry some weight. *See, e.g., Mumphrey v. James River Paper Co.*, 777 F. Supp. 1458, 1460 (W.D. Ark. 1991) (claim barred because plaintiff filed only an *in forma pauperis* application, without a complaint, before the limitations period expired). However, the Clerk received Redd's motion and complaint before the two-year limitations period expired and placed both documents on the court's docket. Doc. Nos. 1 and 1-3. This case was opened at that time and was assigned a case number indicating that it was created in 2011. Under these circumstances, I decline to hold that this case is barred by the statute of limitations.

### D.  Are Defendants Entitled To Qualified Immunity?

Defendants next allege that this case must be dismissed because they are entitled to qualified immunity. Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine balances (a) the need to hold public officials accountable when they exercise power irresponsibly with (b) the need to shield officials from harassment, distraction and liability when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v.*

*Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (citation and internal quotation marks omitted).

Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). The analysis consists of two inquiries:

1. Do the facts alleged or shown make out a violation of a constitutional right?

2. Was that right clearly established (from the perspective of a reasonable official in the defendant's position) at the time of the alleged conduct?

*Pearson,* 555 U.S. at 232; *see also Irving v. Dormire,* 519 F.3d 441, 446 (8th Cir. 2008). A public official is entitled to qualified immunity unless the answer to both questions is "yes." *Pearson,* 555 U.S. at 232. While federal courts were once required to address these two inquiries sequentially, they are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Thus, when appropriate, a court may skip the first inquiry and find that qualified immunity exists based on a finding that the alleged constitutional right was not "clearly established" at the time of the alleged conduct. *Id.*

In large part, the analysis of qualified immunity in this case overlaps my prior analysis of the merits of Redd's First Amendment claim. I have already determined, as a matter of law, that the defendants did not impose a substantial burden on Redd's religious beliefs. Thus, the facts of this case do not make out a violation of a constitutional right.

Even if they did, Redd would have to show that the alleged right was clearly established at the time of the alleged conduct. Whether a right is "'clearly established' is a question of law for the court to decide." *Rohrbough v. Hall*, 586 F.3d 582, 586 (8th Cir. 2009). "For a right to be deemed clearly established, the 'contours of the

14

right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Buckley v. Rogerson*, 133 F.3d 1125, 1128 (8th Cir. 1998) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The relevant question "is whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Rohrbough*, 586 F.3d at 586 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Generally, of course, there is no doubt that Redd had a clearly-established constitutional right to the free exercise of his religious beliefs. Nonetheless, qualified immunity will apply unless it would have been clear to a reasonable officer that the actions Redd complains of were unlawful under the circumstances. This does not necessarily mean that the precise actions had to have been declared unlawful by prior court decisions. *See, e.g., Atkinson v. City of Mountain View*, 709 F.3d 1201, 1212 (citing *Vaughn v. Ruoff*, 253 F.3d 1124, 1129 (8th Cir. 2001)). It does mean, however, that prior decisions must have provided "fair warning" that the actions were unconstitutional. *Id.* (citing *Meloy v. Bachmeier*, 302 F.3d 845, 848 (8th Cir. 2002)).

Redd has not shown that any of the defendants in this case were on notice, in 2009, that it was unconstitutional to require that he sign the Ramadan Agreement as a condition of participating in the Eid. I have reviewed all of the cases Redd relies upon. None of them address a situation analogous to that present here. Nor have I located other authority suggesting that it is a violation of an inmate's constitutional rights to require that he or she agree to certain noncontroversial terms as a condition of participating in a religious celebration.[5] Simply put, even if defendants' conduct could, in hindsight, be deemed to have violated Redd's rights, they did not transgress a "bright line."

---

[5] I use the word "noncontroversial" because, as discussed earlier, Redd has not argued that any provision of the Ramadan Agreement was offensive or contrary to his own beliefs. He objects to the concept of signing an agreement, not the terms of this particular one.

Redd's claim fails both prongs of the qualified immunity analysis. This provides an alternative basis for me to recommend that defendants' motion for summary judgment be granted.[6]

## V.   *CONCLUSION AND RECOMMENDATION*

For the reasons discussed above, I RESPECTFULLY RECOMMEND that the defendants' motion for summary judgment (Doc. No. 11) be **granted**, that this case be **dismissed with prejudice** and that **judgment be entered** in favor of the defendants and against the plaintiff.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

---

[6] Because I recommend entry of summary judgment in favor of all defendants, I will not address the alternative argument that defendants Baldwin, Smith and Dick must be dismissed because they had no involvement with the relevant events. I do note, however, that the record does not reflect that they played any role in the actions and decisions upon which Redd's claim is based.

**IT IS SO ORDERED.**

**DATED** this 28th day of October, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE