# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| TROY REDD,<br><br>        Plaintiff,<br>vs.<br><br>DUSTIN LUTGEN, MARY DICK, CORNELL SMITH, JOHN BALDWIN, and TAHA TAWIL,<br><br>        Defendants. | No. C 11-3046-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING REPORTS AND RECOMMENDATIONS ON PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

_____

In this case, plaintiff Troy Redd, a Muslim inmate in the Iowa state prison system, alleges that the defendant prison officials at the Fort Dodge Correctional Facility (FDCF) violated his constitutional right to free exercise of religion by interfering with his observance of Ramadan. This case is before me on two Reports And Recommendations filed by United States Magistrate Judge Leonard T. Strand. The first is Judge Strand's October 23, 2013, Report And Recommendation On Plaintiff's Application For Preliminary Injunction And Temporary Restraining Order (docket no. 28). The second is Judge Strand's October 28, 2013, Report And Recommendation On Defendants' Motion For Summary Judgment (docket no. 30). Neither side filed any objections to the first Report And Recommendation, but Redd, who is not represented by counsel, filed objections to the second Report And Recommendation on November 19, 2013, styled "Appeal For Further Review On

United States Magistrate Judge, Report And Recommendation Of Defendants' Motion For Summary Judgment" (docket no. 31).

Before considering whether or not to accept either of Judge Strand's Reports and Recommendations, I will first set out my standard of review. The applicable statute provides for *de novo* review by the district judge of a magistrate judge's report and recommendation, when objections are made, as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). Thus, "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The United States Supreme Court has explained that, although the statute provides for review when objections are made, the statutory standard does not preclude review by the district court in other circumstances:

> [W]hile the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas*, 474 U.S. at 154. Thus, the specific standard of review may depend upon whether or not a party has objected to portions of the report and recommendation. I will explain what triggers each specific standard of review in a little more detail.

If a party files an objection to a magistrate judge's report and recommendation, the district court must "make a de novo determination *of those portions of the report or specified proposed findings or recommendations to which objection is made*." 28 U.S.C. § 636(b)(1) (emphasis added). In most cases, to trigger *de novo* review, "objections must be timely and specific." *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). However, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and has also been willing to conclude that general objections require "full de novo review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record."). When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)). Judge Strand did not hold an evidentiary hearing on either of the motions on which he filed a Report And Recommendation, nor did he consider oral arguments on those motions. Instead, he considered only the parties' written submissions, and I have done the same.

In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (stating that § 636(b)(1) "provide[s] for de novo review *only* when a party objected to the magistrate's findings or recommendations" (emphasis added)); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived

his right to de novo review [of a magistrate judge's report and recommendation on a suppression motion] by the district court."). Indeed, *Thomas* suggests that no review at all is required. *Id*. ("We are therefore not persuaded that [§ 636(b)(1)] requires some lesser review by the district court when no objections are filed.").

Nevertheless, a district court may also review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id*. at 154. This discretion to conduct *de novo* review of any issue at any time makes sense, because the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). Also, the Eighth Circuit Court of Appeals has indicated that, at a minimum, a district court should review the portions of a magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that, when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting that the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). Review for clear error, even when no objection has been made, is also consistent with "retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk*, 15 F.3d at 815.

Although neither the Supreme Court nor the Eighth Circuit Court of Appeals has explained precisely what "clear error" review means in this context, in other contexts, the Supreme Court has stated that the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to

4

support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

I will review Judge Strand's Reports And Recommendations with these standards in mind.

In his October 23, 2013, Report And Recommendation (docket no. 28), Judge Strand recommended that I deny Redd's October 15, 2013, Application For Preliminary Injunction And Temporary Restraining Order (docket no. 26). Judge Strand concluded that Redd's request for an injunction on his transfer from the Newton Correctional Facility to the Clarinda Correctional Facility, after a prior transfer from the FDCF to Newton that Redd alleged was in retaliation for the filing of this lawsuit, should be denied. Judge Strand reasoned that Redd was seeking a preliminary injunction concerning the location of his incarceration that bore no proper relationship to his claim of interference with his free exercise of religion in his § 1983 complaint.

Redd has filed no objection to Judge Strand's recommended disposition of his Application For Preliminary Injunction And Temporary Restraining Order, and, upon review, I find no clear error in Judge Strand's recommendation. *Grinder*, 73 F.3d at 795 (noting that, when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor*, 910 F.2d at 520 (noting that the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). As Judge Strand noted, in *Devose v. Herrington*, 42 F.3d 470 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the

party's motion and the conduct asserted in the complaint." 42 F.3d at 471. The court explained that, when that relationship is missing, injunctive relief "has nothing to do with preserving the district court's decision-making power over the merits of [a prisoner's § 1983] lawsuit," and a district court properly rules, as a matter of law, that the prisoner is not entitled to a preliminary injunction. *Id.* I find Judge Strand's conclusion that this is precisely the situation here is not clearly erroneous. Therefore, I accept Judge Strand's recommendation to deny Redd's October 15, 2013, Application For Preliminary Injunction And Temporary Restraining Order (docket no. 26). *See* 28 U.S.C. § 636(b)(1) (2006) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").

Redd has filed objections to Judge Strand's October 28, 2013, Report And Recommendation On Defendants' Motion For Summary Judgment (docket no. 30). In that Report And Recommendation, Judge Strand recommended that I grant the defendants' August 14, 2013, Motion For Summary Judgment (docket no. 11), that I dismiss this case with prejudice, and that I direct the entry of judgment in favor of the defendants and against Redd.

More specifically, Judge Strand first addressed whether Redd had generated genuine issues of material fact on the merits of his "free exercise" claim. This claim arose from Redd's refusal to execute a "Ramadan Agreement," concerning behavior during Ramadan,[1] as a condition of participating with other Muslim inmates in

---

[1] Judge Strand concluded that the record showed that the "Ramadan Agreement" was actually drafted by Imam Taha Tawil of the Islamic Council of Iowa, and the Islamic Consultant for the Iowa Department of Corrections, but that Redd's allegation that he was never told that fact was not material to whether or not Redd's religious beliefs were substantially burdened. Report And Recommendation (docket no. 30) at 10 & n.4.

6

Ramadan observances and the Eid feast at the end of Ramadan. Judge Strand found that the "Ramadan Agreement" stated that failure to sign it would only cause the inmate to be removed from the list of participants and to be excluded from the Eid feast, but that the "Ramadan Agreement" also "noted that even if an inmate was removed from the Ramadan list, he could still fast on his own." Report And Recommendation (docket no. 30), 4. Judge Strand also explained that the record shows that Redd was put on the list of participants, because Imam Taha Tawil recommended to prison officials that he be allowed to participate, notwithstanding his refusal to sign the "Ramadan Agreement." Report And Recommendation (docket no. 30) at 4.

Judge Strand concluded that Redd had failed to generate any genuine issues of material fact that conditioning participation in the Eid feast with other Muslim inmates on signing the "Ramadan Agreement" either (a) significantly inhibited or constrained conduct or expression that manifests a central tenet of Redd's beliefs; (b) meaningfully curtailed Redd's ability to express adherence to his faith; or (c) denied Redd a reasonable opportunity to engage in activities that are fundamental to his religion. *Id*. at 10-11. Judge Strand understood Redd's argument to be that the mere fact of the "Ramadan Agreement," regardless of his failure to argue that the "Ramadan Agreement" was somehow contrary to his religious beliefs, was "illegal" and offensive. *Id*. at 10. Judge Strand concluded that Redd's failure to show a substantial burden on his religion was fully dispositive of Redd's "free exercise" claim. *Id*. at 11.

Although Judge Strand found that the first issue was fully dispositive of Redd's "free exercise" claim, he nevertheless considered the defendants' other asserted grounds for summary judgment. The only other part of Judge Strand's Report And Recommendation on the defendants' Motion For Summary Judgment to which Redd has

7

objected is Judge Strand's alternative conclusion that the defendants are entitled to qualified immunity from Redd's "free exercise" claim.² Judge Strand concluded that, for the same reasons that he had concluded that Redd's "free exercise" rights had not been substantially burdened, the facts did not make out a violation of a constitutional right and that Redd had not shown that any defendants were on notice, in 2009, that it was unconstitutional to require a Muslim inmate to sign the "Ramadan Agreement" as a condition of participating in the Eid feast. Thus, Judge Strand concluded that Redd had failed to overcome either prong of the qualified immunity analysis.

Because Redd had failed to generate genuine issues of material fact of a substantial burden on his religion and had failed to generate genuine issues of material

---

² Judge Strand also considered the defendants' argument that Redd's "free exercise" claim was barred by 42 U.S.C. § 1997e(e), which bars a prisoner's civil action for mental or emotional injury suffered while in custody without a showing of physical injury or the commission of a sexual act. Judge Strand concluded that Redd's prayer for "monetary relief as the Court or Jury see as just" was broad enough to include nominal and punitive damages, even if Redd cannot recover compensatory damages for any mental or emotional injury if he prevails, so that § 1997e(e) would only bar part of Redd's claim. *Id*. at 11-12. The defendants also argued that Redd's claims were barred by the applicable two-year statute of limitations. Judge Strand concluded that Redd's injury occurred, at the latest, on September 21, 2009, when he did not attend the Eid feast; that his application to proceed *in forma pauperis* and his complaint were received by the Clerk of Court on September 12, 2011; that leave to file his complaint was not granted until August 27, 2012; and that there was no evidence that Redd had any control over the amount of time that passed between the filing of his motion to proceed *in forma pauperis* and when it was granted and his complaint was actually filed. Judge Strand concluded that, because the Clerk of Court had received both Redd's motion to proceed *in forma pauperis* and his complaint before the limitations period expired, his case was not barred by the statute of limitations.

fact on the defendants' qualified immunity, Judge Strand recommended that the defendants' Motion For Summary Judgment be granted.

On November 19, 2013, Redd filed a 22-page "Appeal For Further Review On United States Magistrate Judge, Report And Recommendation Of Defendants' Motion For Summary Judgment" (Plaintiff's Objections) (docket no. 31), which I construe to be his "objections" to the Report And Recommendation (docket no. 31) on the defendants' summary judgment motion. Although it is not altogether clear what part of the Report And Recommendation, other than its recommended disposition of his case, Redd finds objectionable, I have done my best to parse his arguments to determine his objections and to review the challenged conclusions *de novo*. *See Hudson*, 46 F.3d at 786 (explaining that courts must "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors"); *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record.").

First, it appears that Redd objects to Judge Strand's conclusion that there was no substantial burden on his religion. Redd argues that the "Defendants['] deliberate attempt of the use of coercion, pressure and restriction of attending a required Islamic function to persuade the Plaintiff to enter into the signing of an illegal Agreement . . . violates the Plaintiff['s] First Amendment Free Exercise Clause and the Plaintiff['s] belief of his obligation solely to one god (Allah)." Plaintiff's Objections at 8. He also argues that the "Ramadan Agreement is not a requirement of Allah['s] laws or a requirement of none [sic] incarcerated Muslim[s] to sign to fulfill their obligation to Allah. This illegal practices [sic] is only required throughout the Iowa Department of Corrections." *Id.* at 10. Redd admits that, despite his refusal to sign the "Ramadan Agreement," his name appeared on the list notifying staff of participants in Ramadan, which was also posted in the cell blocks on three dates prior to the Eid feast on

September 21, 2009—August 14, 2009, August 17, 2009, and September 17, 2009. *Id.* at 10-11. Nevertheless, he contends that he had been given a directive by defendant Lutgen that he could not participate without entering into the "Ramadan Agreement" and that he was not informed prior to the Eid feast that he could attend, notwithstanding his refusal to sign the "Ramadan Agreement." Upon *de novo* review, this objection is overruled.

As the Eighth Circuit Court of Appeals has explained, to avoid summary judgment on a "free exercise" claim, under either the First Amendment to the United States Constitution, the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1, or the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, a prisoner "must first raise a material question of fact regarding whether the [prison] has placed a 'substantial burden' on his ability to practice his religion." *Patel v. United States Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). As the court has also explained,

> Substantially burdening one's free exercise of religion means that the regulation
>
>> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.
>
> *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir.2004) (quotation and alterations omitted).

*Patel*, 515 F.3d at 813. The court need not reach the issue of whether the burden is unconstitutional, if the court "conclude[s] [the prisoner] has not put forth sufficient

evidence that a reasonable jury could conclude that his ability to practice his religion has been substantially burdened." *Id.*

Upon *de novo* review and consideration of Redd's objection, Redd did not and still has not generated any genuine issue of material fact that his ability to practice his religion was "substantially burdened" by the requirement that he sign the "Ramadan Agreement" to participate in organized observances of Ramadan and the Eid feast with other Muslim inmates. *Id.* The "Ramadan Agreement" itself states the following at the bottom:

> PS: Exception to these guidelines is [sic] those inmates who are ill and must take their medication. *If your name is removed from the list, it does not mean that you cannot continue the fast on your own.* It does mean that you will not be permitted to breakfast with Muslims or participate in the Feast (Eid) meal and festivity. Any inmate dropped for any of the above reasons may appeal by sending to the Islamic Council of Iowa a written request for reconsideration, with explanation.

Defendants' Appendix To Summary Judgment Motion (docket no. 11-3), 8 (Exhibit C) (emphasis added). Because Redd's refusal to sign the "Ramadan Agreement" did not prevent him from celebrating Ramadan, it did not significantly inhibit or constrain conduct or expression that manifests some central tenet of Redd's individual religious beliefs; meaningfully curtail his ability to express adherence to his faith; or deny him reasonable opportunities to engage in those activities that are fundamental to his religion. *Patel*, 515 F.3d at 813 (defining "substantially burdening one's free exercise of religion" (citing *Murphy*, 372 F.3d at 988)).

Furthermore, the record shows, beyond dispute, that Redd would have been allowed to participate notwithstanding his refusal to sign the "Ramadan Agreement," because he was placed on the posted lists of participants on three occasions prior to the Eid feast, Plaintiff's Objections at 10-11, and that this was done on the recommendation

of Imam Taha Tawil. Defendants' Appendix To Summary Judgment Motion (docket no. 11-3) at 22 (Exhibit J). To put it another way, even if Redd sincerely believed that the "Ramadan Agreement" was "illegal," because of his belief that it is "illegal" to condition his participation in group religious observances on such an agreement, his participation ultimately was not conditioned on his signing of the "Ramadan Agreement." Finally, Redd simply has not generated any genuine issue of material fact that prison officials did not inform him that he *could* participate in the Eid feast with other Muslim inmates prior to the feast, where he admits that he was placed on the list of participants posted in the cell block on three occasions prior to the feast.

Redd also objects to Judge Strand's alternative conclusion that the defendants are entitled to summary judgment on his "free exercise" claim on the basis of qualified immunity. His objection is, in essence, that he has raised genuine issues of material fact that his "free exercise" rights were violated and that prison officials should have known of their obligation to uphold the Constitution of the United States. Plaintiff's Objections at 12. Upon *de novo* review, this objection is also overruled.

In deciding whether prison officials are entitled to qualified immunity on an inmate's "free exercise" claim, the court must conduct a two-prong inquiry that examines "'(1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right' and (2) whether the constitutional right violated 'was clearly established at the time of defendant's alleged misconduct."'" *Sisney v. Reisch*, 674 F.3d 839, 844 (8th Cir. 2012) (quoting *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011), in turn quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Courts are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Like Judge Strand, I conclude that Redd has failed to generate genuine issues of material fact on the first prong of the qualified immunity analysis, for the same reasons that I concluded, above, that Redd has failed to generate genuine issues of material fact that his "free exercise" rights were violated. *Sisney*, 674 F.3d at 844 (first prong). Furthermore, even if Redd *had* generated genuine issues of material fact on a "free exercise" violation, I conclude, like Judge Strand, that such a violation was not "clearly established."

The purpose of the "clearly established" prong of the qualified immunity analysis "is to ensure government officials 'are on notice their conduct is unlawful.'" *Id*. at 845 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). More specifically,

> "Whether the controlling legal principle has been clearly established is not to be determined at the most general level of legal abstraction[.]" *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir.1998). Instead, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, the "salient question" for the court to ask is whether the state of the law at the time gave the officials "fair warning" their conduct was unlawful. *Hope*, 536 U.S. at 741, 122 S.Ct. 2508. We answer this question by examining the "specific actions" of the official. *Norman v. Schuetzle*, 585 F.3d 1097, 1109 (8th Cir.2009).

*Sisney*, 674 F.3d at 845-46. Redd has only asserted that his "free exercise" rights were established "at the most general level of legal abstraction," but he has pointed to nothing indicating that "the contours of the [free exercise] right [were] sufficiently clear that a reasonable official would understand that" requiring a prisoner to sign the "Ramadan Agreement" before being allowed to participate with other Muslim inmates in organized observances of Ramadan and the Eid feast "violates that right," let alone that identifying Redd as a permitted participant, notwithstanding his failure to sign the

13

"Ramadan Agreement," "violates that right." *Id.* (internal quotation marks and citations omitted).

Finally, I have reviewed the parts of Judge Strand's Report And Recommendation On Defendants' Motion For Summary Judgment to which no objections have been made for "clear error," *Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520, and I find none.

Consequently, I will accept Judge Strand's October 28, 2013, Report And Recommendation On Defendants' Motion For Summary Judgment (docket no. 30), which recommends that the defendants' August 14, 2013, Motion For Summary Judgment (docket no. 11) be granted.

THEREFORE,

1. I **accept** Judge Strand's October 23, 2013, Report And Recommendation (docket no. 28), and Redd's October 15, 2013, Application For Preliminary Injunction And Temporary Restraining Order (docket no. 26) is **denied**;

2. I also **accept** Judge Strand's October 28, 2013, Report And Recommendation On Defendants' Motion For Summary Judgment (docket no. 30), as follows:

    a. As to those parts of this Report And Recommendation to which objections have been made, upon *de novo* review,

        i. I **overrule** Redd's November 19, 2013, objections to this Report And Recommendation, styled "Appeal For Further Review On United States Magistrate Judge, Report And Recommendation Of Defendants' Motion For Summary Judgment" (docket no. 31);

        ii. I **accept** Judge Strand's recommendation that summary judgment be granted in favor of the defendants on the ground that Redd

has failed to generate genuine issues of material fact that his "free exercise" rights were violated;

  iii. I **accept** Judge Strand's recommendation that summary judgment be granted in favor of the defendants on the ground that Redd has failed to generate genuine issues of material fact on the defendants' entitlement to qualified immunity; and

 b. As to those parts of this Report And Recommendation to which *no* objections were made, upon review for "clear error," I **accept** Judge Strand's recommendations; and, consequently,

 c. The defendants' August 14, 2013, Motion For Summary Judgment (docket no. 11) is **granted**.

IT IS FURTHER ORDERED that this case is **dismissed with prejudice** and that **judgment shall enter** in favor of the defendants and against Redd.

**IT IS SO ORDERED**.

**DATED** this 23rd day of January, 2014.

        *[signature: Mark W. Bennett]*
        _____
        MARK W. BENNETT
        U.S. DISTRICT COURT JUDGE
        NORTHERN DISTRICT OF IOWA